```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
JOAN C. LIPIN,                                             :    07 Civ. 226 (RJH)
                                                           :
                    Plaintiff,                             :
                                                           :
        -against-                                          :
                                                           :
DAVID E. HUNT and DANSKE BANK,                             :
                                                           :
                    Defendants.                            :
                                                           :
-----------------------------------------------------------x
-----------------------------------------------------------x
                                                           :
JOAN C. LIPIN,                                             :    07 Civ. 7833 (RJH)
                                                           :
                    Plaintiff,                             :
                                                           :    **MEMORANDUM**
        -against-                                          :    **OPINION AND ORDER**
                                                           :
ULF BERGQUIST,                                             :
                                                           :
                    Defendant.                             :
                                                           :
-----------------------------------------------------------x
```

David E. Hunt, a defendant in *Lipin v. Hunt*, 07 Civ. 226, and Ulf Bergquist, the defendant in *Lipin v. Bergquist*, 07 Civ. 7833, have each moved for sanctions against plaintiff Joan C. Lipin pursuant to Rule 11 of the Federal Rules of Civil Procedure. Each defendant seeks recovery of reasonable attorneys' fees and costs incurred in the respective actions as well as an injunction barring Ms. Lipin from filing any appeals, motions, or other papers in the instant actions or from filing any related lawsuits in any jurisdiction, without prior approval of the Court.

# BACKGROUND

As noted in this Court's February 20, 2008 opinion in *Lipin v. Hunt*, 538 F. Supp. 2d 590 (S.D.N.Y. 2008), Ms. Lipin has participated in and/or initiated numerous actions in various courts related to her alleged ownership of property belonging to her late father, Dr. Theodore Lipin, including an antique coin collection and real property located in Maine (the "Moose Pond property").[1] In addition to her involvement in estate proceedings in Maine and Sweden, Ms. Lipin has now filed six separate actions based on her alleged ownership of this property and/or actions taken by various persons in connection with the administration of her father's estate, the disposition of estate property, and the associated legal proceedings. Four of these actions were summarized in *Lipin v. Hunt*, 538 F. Supp. 2d 590, 592–93 (S.D.N.Y. 2008). Ms. Lipin has recently filed her fifth and sixth related actions, *Lipin v. Allegaert Berger & Vogel LLC*, 08 Civ. 6994, and *Lipin v. Krainin Real Estate*, 08 Civ. 7447, both of which have been removed to this Court from New York state court. In the *Allegaert* action, Ms. Lipin has sued her siblings, the administrator of her father's estate, Hunt and Bergquist, the law firm representing Hunt and Bergquist, and her mother Kathe Lipin.[2] Ms. Lipin purports to assert claims aginst these defendants under, *inter alia*, the Racketeer Influenced Corrupt Organizations Act (RICO), the Economic Espionage Act of 1996, the Hobbs Act, and for theft of trade secrets. In the *Krainin* action, Plaintiff has sued a real estate agency, two

---

[1] Ms. Lipin's allegations are described in detail in this Court's opinions dismissing her claims in *Lipin v. Hunt*, 538 F. Supp. 2d 590, 593–97 (S.D.N.Y. 2008), and *Lipin v. Bergquist*, 07 Civ. 7833 (S.D.N.Y. Aug. 28, 2007).

[2] According to an August 7, 2008 letter from defendants' counsel, Ms. Lipin's mother is 86 years old and confined to a psychiatric hospital in Sweden.

real estate brokers, and the administrator of her father's estate, apparently for their efforts to sell the Moose Pond property.

**Ms. Lipin's Conduct Before Other Courts**

Ms. Lipin has been sanctioned severely by other courts for her litigation conduct. For example, in January 2008, the Maine Supreme Court assessed attorneys' fees and treble costs against Ms. Lipin after her "frivolous" appeal of the denial of a motion seeking recusal of the probate court judge. The court commented that

> [t]he voluminous record from the Probate Court makes it clear that Joan, who represents herself and is extraordinarily litigious, has burdened the court with many lengthy and unnecessary filings, and has unnecessarily delayed final resolution of the probate of her father's estate. . . . [She] has filed an enormous number of pleadings . . . of highly questionable validity exhibiting dilatory conduct and vexatious litigation tactics by abusive pleadings that have resulted in a waste of legal fees, burdened the clerks' offices, and wasted time and resources.

(Chen Decl. Ex. 2 at 4–5 (Per Curiam Order at 4–5, *In re Estate of Theodore Lipin*, Cum-07-372 (Me. Jan. 29, 2008) (internal quotation marks omitted).) As this Court has previously noted, Ms. Lipin has been assessed monetary sanctions on various other occasions. *See Lipin v. Hunt*, 538 F. Supp. 2d at 604–05 (citing four cases in which Maine courts ordered Ms. Lipin to pay monetary sanctions for litigation misconduct).

More recently, in April 2008, the Cumberland County Probate Court ordered Ms. Lipin to pay over $380,000.00 in legal fees incurred by her siblings and her father's estate "in responding to Ms. Lipin's abuse of the litigation process." (Chen Decl. Ex. 1 (Order Granting Pet'n For Interim Award of Att'y Fees, *In re Estate of Theodore Lipin*,

No. 2005-1642(1) (Me. Probate Ct. Apr. 23, 2008)) at 2.) The court had already enjoined Ms. Lipin from filing further pleadings or lawsuits without the court's approval. (*Id.*) The court noted that Ms. Lipin had been enjoined by three other courts from filing additional pleadings, motions, appeals, and/or lawsuits without first showing that the proposed submission "meets a good faith standard." (*Id.*) The court characterized her conduct as follows:

> Ms. Lipin has filed in this Court an enormous number of pleadings and other papers almost all of which have been frivolous, duplicative of other filings and interposed for purposes of preventing and delaying this Court from reaching the merits of the matters before it.
>
> In an effort to obstruct a fair and orderly administration of the estate, Ms. Lipin filed numerous actions and appeals undertaken without good faith and abusive of the courts and other parties . . . Some of these actions and appeals have been designed to prevent counsel from representing the petitioners and to prevent this Court from acting on matters before it. In these actions and appeals, Ms. Lipin has filed an enormous number of pleadings, motions and other papers almost all of which have been denied, dismissed or otherwise disposed of in the petitioners' favor.
>
> * * *
>
> Ms. Lipin's course of conduct constitutes a pattern of conduct designed to misuse the judicial system and injure the petitioners. Her actions have been aimed at depleting the assets of the Estate so as to prevent her siblings from receiving any inheritance, forcing her siblings to incur significant attorneys' fees, harassing the petitioners and wasting the courts' valuable time and resources. Her never-ending efforts to thwart a resolution of this dispute have forced the Estate and other parties interested in the Estate to incur significant legal fees that would have been unnecessary had Ms. Lipin acted in good faith. She has not acted in good faith; she has acted in bad faith. She has caused significant and valuable resources of the Estate to be wasted, thus depleting assets that might otherwise have been available to distribute to the beneficiaries.

(*Id.* at 1–2.)

Ms. Lipin's history of sanctionable litigation conduct extends beyond the current dispute regarding her father's estate. Ms. Lipin previously filed suit against her former

employer, the American Red Cross in Greater New York, asserting causes of action for sexual harassment and discrimination, wrongful termination, civil rights violations, conspiracy, conspiratorial cover-up, defamation, blacklisting, breach of contract, and intentional infliction of emotional distress.[3] The action was dismissed with prejudice after Ms. Lipin, during a pretrial proceeding, removed from the counsel table a stack of documents belonging to defendants' counsel and containing privileged material and attorney work product, made photocopies of the documents, and, with her attorney, attempted to use them as leverage in settlement negotiations. Following dismissal of her case, Ms. Lipin filed a new action in federal court, reasserting her original claims against the original defendants and adding new defendants, including the defense attorneys in the dismissed action, and new claims, including the claim that the defendants had conspired to entrap her into taking the privileged documents. When this action was stayed pending Ms. Lipin's appeal of the dismissal of her original action, she filed another federal action, in which she asserted these same claims against a combination of old and new defendants. When her federal actions were dismissed, Ms. Lipin filed a fourth action, characterized by the District Court as "another attempt to assert the claims raised and dismissed in her first three actions." *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 202 F. Supp. 2d 126, 131 (S.D.N.Y. 2002).[4] The court found that Ms. Lipin had filed four complaints

---

[3] The Court has relied on *Lipin v. Bender*, 597 N.Y.S.2d 340 (N.Y. App. Div. 1993), *Lipin v. Bender*, 84 N.Y.2d 562 (N.Y. 1994), *Lipin v. Am. Nat'l Red Cross*, Nos. 93 Civ. 1334 & 92 Civ. 4455, 1996 WL 18901 (S.D.N.Y. Jan. 17, 1996), *Lipin v. Am. Nat'l Red Cross*, Nos. 96-7195 & 96-7193, 1997 WL 279912 (2d Cir. May 22, 1997), and *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 202 F. Supp. 2d 126 (S.D.N.Y. 2002), for its summary.

[4] In this action, Ms. Lipin "reiterat[ed] the allegations of sexual harassment and discrimination in connection with her employment by the National Red Cross," and "assert[ed] a number of purported conspiracy and civil rights claims . . . all premised on the notion that the evidence on which the state court based its misconduct findings . . . was fraudulent." *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 202 F. Supp. 2d at 131. Specifically, Ms. Lipin "allege[d] that Defendants conspired to defame her, to

5

"asserting essentially the same claims in slightly altered guise," and that her conduct "reveals clearly that [Ms. Lipin] and her attorney cannot be depended upon to accept the results of motion practice or the dismissal of [their] claims" or to "desist from repeated attempts to relitigate previously rejected claims." *Id.* at 142 (internal quotations omitted). The court therefore permanently enjoined Ms. Lipin and her attorney from further litigation related to her sexual harassment or termination, alleged attempts to prevent her from litigating such claims, or her misconduct before the state court.[5] *Id.*

**Ms. Lipin's Conduct Before This Court**

In the *Hunt* and *Bergquist* actions, Ms. Lipin has filed two lengthy complaints purporting to assert dozens of causes of action against the defendants.[6] The Court has granted Hunt and Bergquist's motions to dismiss for lack of personal jurisdiction, as the complaints set forth no basis whatsoever for the exercise of personal jurisdiction over either defendant. Ms. Lipin has made no serious attempt in any of her court filings to address the issue of personal jurisdiction. Because the Court lacked personal jurisdiction

---

obstruct justice, and to deprive her of her constitutional rights by, among other things, referring to the . . . misconduct findings in later litigation papers and in a report in connection with a disciplinary proceeding later commenced with respect to . . . her attorney. . . [and alleged] that Defendants conspired to retaliate against her because of her commencement of [the state court action]." *Id.*

[5] The court also ordered Ms. Lipin to pay $3000 in attorneys' fees. *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 202 F. Supp. 2d at 141.

[6] The *Bergquist* complaint is strewn with inappropriate and offensive attempts to equate Ms. Lipin's experience with that of European Jews during the Holocaust and to equate the defendants with the Nazi persecutors. She characterizes the sale of Dr. Lipin's coin collection as "similar to what was done in Germany during the Holocaust in the Nazi period" (*Bergquist* Am. Compl. ¶ 214), alleges that Hunt and Bergquist have engaged in "anti-Semitic tactics" in litigation, such as employing "the 'Big Lie' technique" in a tax return submitted on behalf of the estate (*id.* ¶ 216), and suggests that Hunt and Bergquist, like the Nazis, desire that she "accept the status of becoming a non-person without economic standing or livelihood." (*id.* ¶¶ 215, 216). In a declaration submitted in opposition to Bergquist's motion to dismiss, Ms. Lipin further contends that Bergquist's opening brief espouses views similar to those advanced by Adolf Hitler in *Mein Kampf*. (Pl.'s Opp'n Decl. ¶ 50.)

6

over Hunt and Bergquist, it did not address the merits of Ms. Lipin's claims against them. However, even a cursory review of the allegations in these actions reveals that most, if not all, of the claims are of doubtful merit at best.[7] *See Lipin v. Hunt*, 538 F. Supp. 2d at 593–97; *Lipin v. Bergquist*, 07 Civ. 7833 (S.D.N.Y. Aug. 28, 2008). Moreover, many of these claims are premised on Ms. Lipin's contention that she owns the coin collection and the Moose Pond property, contentions that have been rejected already by other courts. *See Lipin v. Estate of Lipin*, No. RE-05-145, slip. op. at 2–3, 7–9 (Me. Super. Oct. 23, 2007) (holding that there was no contract between Ms. Lipin and her father regarding transfer of the coin collection or the Moose Pond property, that Dr. Lipin had not made an *inter vivos* gift of the coin collection to Ms. Lipin, that Dr. Lipin retained title to the Moose Pond property at the time of his death, and that Ms. Lipin never recorded a deed indicating her ownership of the Moose Pond Property); *Lipin v. Ellis*, No. 07-92-P-S, 2007 WL 2701493, at *1 (D. Me. Sept. 10, 2007) (adopting Magistrate Judge's report and recommendation in *Lipin v. Ellis*, No. 07-92-P-S, 2007 WL 2198876 (D. Me. July 26, 2007), which found, *inter alia*, that Dr. Lipin held title to the Moose Pond property at the time of his death); *see also Lipin v. Hunt*, 538 F. Supp. 2d at 601 (finding that Ms. Lipin had not alleged any facts to support ownership of the coin collection). Ms. Lipin has presented nothing in her pleadings or other court filings to suggest that these findings should be reexamined.[8]

---

[7] In the *Hunt* action, Ms. Lipin's claims against defendant Danske Bank, which did not challenge personal jurisdiction, included a claim for false imprisonment against Danske Bank, which allegedly "coerce[ed] her to surrender" her passport in order to photocopy it. *Lipin v. Hunt*, 538 F. Supp. 2d at 601–02.

[8] While Ms. Lipin's briefs are not without legal citation, they consist largely of lengthy excerpts from cases that are irrelevant and/or inapplicable to the legal issues presented by her claims and conclusory accusations regarding the defendants' alleged frauds, concealments, and conspiracies.

Hunt previously moved for Rule 11 sanctions against Ms. Lipin in the *Hunt* action in July 2007. In an opinion dismissing her claims in that action, the Court declined to issue sanctions but stated that it may reconsider the issue at a later time, taking into consideration Ms. Lipin's "entire course of litigation conduct, which may be relevant to the question of whether [the *Hunt* action] and/or the *Bergquist* action was filed with a proper purpose." The Court warned Ms. Lipin in no uncertain terms that she would be sanctioned if she chose "to engage in conduct similar to that for which she has been sanctioned by other courts," and reminded her that "any submission to this Court must be supported by a coherent, relevant, nonfrivolous legal argument and by factual contentions with at least a reasonable likelihood of evidentiary support." *Lipin v. Hunt*, 538 F. Supp. 2d at 605.

Since the dismissal of her claims in the *Hunt* action, Ms. Lipin has filed motions in both the *Hunt* and *Bergquist* actions seeking disqualification of all defendants' counsel, judicial disqualification, vacatur of the Court's dismissal of this action, and permission to assert claims against the law firms representing the defendants based on the newly discovered role of these firms in the widening conspiracy to steal her property. Though these motions remained pending, Ms. Lipin filed another motion in each action on June 7, 2008 again seeking disqualification of defendants' counsel and judicial disqualification.[9] As noted, Ms. Lipin has since filed the *Allegaert* action, against, *inter alia*, Hunt, Bergquist, and the law firm that represented them in the *Hunt* and *Bergquist* actions, and

---

[9] In each case, Ms. Lipin filed essentially identical motions in each action without regard to the different procedural postures of the two cases, most notably the fact that the *Hunt* action was closed. These motions have been denied in their entirety. *See Lipin v. Hunt*, 07 Civ. 226, slip op. at 1–7 (S.D.N.Y. Aug. 28, 2008); *Lipin v. Hunt*, 07 Civ. 7833, slip op. at 2–6, 13–14 (S.D.N.Y. Aug. 28, 2008).

8

the *Krainin* action, against, *inter alia*, Evelyn Ellis, whom Ms. Lipin has named as a defendant in at least three other actions, including *Allegaert*.

Ms. Lipin's latest set of motions, as well as the *Allegaert* action, appear not to have been brought in good faith, but rather as part of Ms. Lipin's practice of suing and/or moving to disqualify judges and opposing counsel following adverse rulings. *See, e.g., Lipin v. Hunt*, 538 F. Supp. 2d at 593–97 (summarizing claims against Hunt for actions taken while acting as attorney for special administrator of Dr. Lipin's estate); *Lipin v. Allegaert Berger & Vogel LLP*, 08 Civ. 6994 (S.D.N.Y. filed Aug. 5, 2008) (asserting claims against law firm representing Hunt and Bergquist); *In re Estate of Theodore Lipin*, 739 A.2d 107, 108–09 (Me. 2008) (noting that Ms. Lipin had twice moved for recusal of Maine probate judge Mazziotti following unfavorable rulings); Complaint, *Lipin v. Ellis*, No. 07-92-P-S, (D. Me. May 20, 2007) (asserting claims against probate judge and attorneys for other beneficiaries in estate proceeding); *Lipin v. Ellis*, No. 07-92-P-S, 2007 WL 2198876, at *2, 3 n.6 (D. Me. July 26, 2007) (noting that Ms. Lipin had moved for disqualification of counsel, citing alleged "conflicts of interest," and had alleged that defendants and defendants' counsel were "engaged in a conspiracy to financially ruin and silence her and extract astronomical legal fees from the Estate and/or herself directly"); *Lipin v. Am. Nat'l Red Cross*, Nos. 96-7195 & 96-7193, 1997 WL 279912, at *2 (2d Cir. May 22, 1997) (noting that Ms. Lipin filed motions to disqualify defendants' attorneys in her second and/or third lawsuits filed against her former employee after her termination); *Lipin v. Am. Nat'l Red Cross*, 93 Civ. 1334 & 92 Civ. 4455, 1996 WL 18901, at *2 (S.D.N.Y. Jan. 17, 1996) (noting that Ms. Lipin had sued defendants' attorneys after dismissal of her original complaint).

# HUNT AND BERGQUIST'S RULE 11 MOTIONS

Hunt and Bergquist have moved pursuant to Rule 11 of the Federal Rules of Civil Procedure (1) for an injunction barring Ms. Lipin from further litigation of the instant actions or of any new related actions without prior approval of the Court and (2) for attorneys' fees incurred in connection with these actions.

In relevant part, Rule 11(b) provides that any court filing or other representation to the court constitutes a certification that

> to the best of the [filer's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. R. Civ. P. 11(b).

Rule 11(c), in turn, permits a court to impose "appropriate sanctions" for violations of Rule 11(b). Fed. R. Civ. P. 11(c)(1). Sanctions imposed under Rule 11(c) "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). "When a court determines that Rule 11 sanctions are appropriate, it 'has

significant discretion in determining what sanctions, if any, should be imposed for a violation.'" *E. Gluck Corp. v. Rothenhaus*, No. 08 Civ. 3466 (VM), 2008 WL 2944624, at *3 (S.D.N.Y. July 31, 2008) (quoting Fed. R. Civ. P. 11 Advisory Committee Note); *see also Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("[I]f the district court concludes that the assertion of a given claim violates Rule 11 . . . the decision whether or not to impose sanctions is a matter for the court's discretion.").

Hunt and Bergquist contend that Ms. Lipin has violated Rule 11(b)(1), (2) and (3). Viewing her pleadings and motions filed in these actions in light of her considerable record of litigation misconduct, the Court finds that Ms. Lipin is in violation of Rule 11(b)(1). The fact that she persists in pursuing claims similar or identical to those that have been previously rejected without addressing the grounds for rejection indicates that she has not acted in good faith, but with an improper motive—to harass and punish anyone who has frustrated her efforts to take possession of property she believes is rightfully hers.

For reasons discussed herein and in the opinions dismissing Lipin's claims in these actions, the Court also finds that many of Ms. Lipin's claims and requests for relief have been wholly frivolous in violation of Rule 11(b)(2). Her pleadings recite lists of alleged causes of action, generally without connection to any specific factual allegations. Many of these causes of action are obviously inapplicable, for example, "tax fraud," "grand larceny," violations of Constitutional rights, and antitrust claims. She has also offered no colorable argument to support this Court's exercise of personal jurisdiction for claims against defendants from Maine and Sweden for actions taken outside New York in furtherance of an alleged conspiracy to steal property located outside of New York.

Finally, as noted, many of Ms. Lipin's claims are premised on her ownership of her father's coin collection and/or the Moose Pond property, despite the fact that other courts have already rejected her claims of ownership to such property.

With respect to Rule 11(b)(3), while the Court may have doubts about some of Ms. Lipin's factual contentions, it cannot find, at this stage of the litigation, that these contentions are without evidentiary support and/or that discovery would be unlikely to yield such evidentiary support.

**Injunctive Relief Barring Further Litigation**

It is "beyond peradventure" that "[a] district court possesse[s] the authority to enjoin [a litigant] from further vexatious litigation." *Safir v. U.S. Lines Inc.*, 792 F.2d 19, 23 (2d Cir. 1986); *see also Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 202 F. Supp. 2d at 142 ("A district court has the authority to enjoin a plaintiff who engages in a pattern of vexatious litigation from continuing to do so.").

> [T]he district court, in determining whether or not to restrict a litigant's future access to the courts, should consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have a good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Safir*, 792 F.2d at 24.

The Court finds that all of these factors support imposing restrictions on Ms. Lipin's access to the courts. Ms. Lipin has a well documented history of vexatious

litigation, and the Court has found that her pleadings and motions have been made with an improper purpose. Though Ms. Lipin is proceeding *pro se*, "a court's authority to enjoin vexatious litigation extends equally over *pro se* litigants and those represented by counsel," and a court's "special solicitude" towards *pro se* litigants "does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *Pandozy v. Segan*, 518 F. Supp. 2d 550, 558 (S.D.N.Y. 2007) (internal quotation marks omitted). Ms. Lipin's prolix and redundant pleadings make conclusory reference to a multitude of claims, which in turn are purportedly asserted against multiple defendants as part of a vaguely defined "conspiracy." Interpreting and responding to these allegations imposes a tremendous and unnecessary burden on defendants and on the Court.[10] Finally, it is apparent that other sanctions will not deter Ms. Lipin from further vexatious and baseless litigation. She has repeatedly demonstrated her unwillingness to accept unfavorable rulings on her claims. Each time her claims are dismissed, she repackages them with new labels, against new defendants, and in new courts, as part of an "ever-broadening conspiracy theory." Though injunctive relief is an "extraordinary" sanction, it is clearly both warranted and necessary in this case. *See Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 202 F. Supp. 2d at 142 ("Because it is clear that neither [Ms. Lipin nor her attorney] can be depended upon to desist from repeated attempts to relitigate previously rejected claims and each rejection has led to elaboration of an ever-broadening conspiracy theory, the extraordinary remedy of injunctive relief barring the commencement of further related

---

[10] Hunt has apparently represented to the Maine Probate Court that, as of October 2007, he had incurred over $70,000 in attorneys' fees in the *Hunt* and *Bergquist* actions. (Chen Decl. Ex. 1 (Order Granting Pet'n For Interim Award of Att'y Fees, *In re Estate of Theodore Lipin*, No. 2005-1642(1) (Me. Probate Ct. Apr. 23, 2008)) at 4.)

13

litigation is appropriate."); *Fitzgerald v. Field*, No. 99 Civ. 3406, 1999 WL 1021568, at *5 (S.D.N.Y. Nov. 9, 1999) (enjoining the plaintiff from filing further litigation without court approval, citing his "refusal to accept judicial rulings or the rejection of his claims").

"In limiting a citizen's ability to litigate, a court should take special care to ensure that the restrictions placed on the party are 'taken together, not so burdensome as to deny the litigant meaningful access to the courts.'" *Id.* at *6 (quoting *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985)). The Second Circuit has indicated that an injunction restricting a litigant's access to the courts is not overly broad if it preserves that litigant's ability to assert meritorious claims with approval of the court. *See Safir*, 792 F.2d at 25 (modifying "overly broad" injunction that "preclude[d] [the plaintiff] from instituting any action whatsoever" to provide that the plaintiff was prevented from filing actions related to those previously litigated without first obtaining leave of the court); *Abdullah*, 773 F.2d at 488 (finding that overbreadth of injunction directing clerk to reject all *in forma pauperis* filings or complaints from plaintiff relating to his arrest, trial, conviction, or imprisonment was "easily cured by modifying the injunction to require [the plaintiff] to seek leave of the district court before filing such actions").

Therefore, Ms. Lipin is enjoined from further litigation of any claims relating to her father's coin collection, the Moose Pond property, actions taken in connection with her father's estate or estate property, or actions taken in connection with legal proceedings involving her father's estate or estate property, without first obtaining leave of this Court, except to submit papers responding to a submissions by a defendant, or, when appropriate, to seek appellate review of a decision.

**Attorneys' Fees**

As discussed above, Ms. Lipin has violated Rule 11 and sanctions are warranted. However, because the Court has enjoined her from further litigation and because monetary penalties have obviously proven ineffective in the past, assessment of attorneys' fees are neither necessary nor sufficient "to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4). While the Court is sensitive to the cost that Ms. Lipin has imposed on the defendants, "the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses." *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994). Because Ms. Lipin's abusive conduct will be completely deterred by injunctive relief, an additional award of attorneys' fees is not warranted. *See, e.g., Brady v. Marks*, 7 F. Supp. 2d 247, 256 (W.D.N.Y. 1998) ("Since my order enjoining plaintiff from filing further actions relating to his Family Court proceedings without prior leave of court should effectively prevent plaintiff from continuing to pursue such baseless claims in this court, additional sanctions, at this time, such as a monetary penalty, should not be necessary.").

**CONCLUSION**

For the reasons discussed herein, Hunt and Bergquist's motions for sanctions—**[86]** in 07 Civ. 226 and **[23]** in 07 Civ. 7833—are granted in part. Ms. Lipin is enjoined from further litigation of any claims relating to her father's coin collection, the Moose Pond property, actions taken in connection with her father's estate or estate property, or actions taken in connection with legal proceedings involving her father's estate or estate

property, without first obtaining leave of this Court, except to submit papers responding to a submissions by a defendant, or, when appropriate, to seek appellate review of a decision.

The clerk of the court is directed to reject any further filings by Ms. Lipin in all of her actions previously or presently pending before the Court—07 Civ. 226, 07 Civ. 7833, 08 Civ. 6994, and 08 Civ. 7447—and to reject any further filings of new civil actions by Ms. Lipin unless approved by order of the Court following written application by Ms. Lipin.

SO ORDERED.

Dated: New York, New York
August 28, 2008

Richard J. Holwell
United States District Judge